EAST MARKET STREET HOTEL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8664.   Promulgated April 24, 1928.

*John T. Kennedy, Esq.*, and *Floyd Chilton, Esq.*, for the petitioner.
*Henry Ravenel, Esq.*, for the respondent.

798

OPINION.

LOVE: The petitioner contends and the Commissioner denies that it is entitled to include in its invested capital for the years 1919 and 1920, the value of the lease at an amount equivalent to its value when acquired by Holden, less exhaustion to the beginning of each year. In this connection, it is urged that the lease had a value of

$70,000 when acquired by Holden in September, 1917, and the same value when acquired by it.

Assuming for the moment that the lease had the value claimed at the time it was acquired by petitioner, we are clearly of the opinion that, under the circumstances herein, the petitioner may not include any amount on account thereof in its invested capital.

It is clearly established by the evidence that the lease in question was acquired by Holden without any expenditure therefor. It is further shown that Holden did not give up or relinquish any valuable right when he surrendered the first lease in order to obtain the one under consideration. We must, therefore, agree with the Commissioner that the lease of September, 1917, cost Holden nothing.

Holden, in exchange for the lease and other property, received 995 of the 1,000 shares of petitioner's capital stock. Obviously, therefore, the computation of petitioner's invested capital is subject to the provisions of section 331 of the Revenue Act of 1918, which provides:

In the case of the reorganization, consolidation, or change of ownership of a trade or business, or change of ownership of property, after March 3, 1917, if an interest or control in such trade or business or property of 50 per centum or more remains in the same persons, or any of them, then no asset transferred or received from the previous owner shall, for the purpose of determining invested capital, be allowed a greater value than would have been allowed under this title in computing the invested capital of such previous owner if such asset had not been so transferred or received: *Provided*, That *if such previous owner was not a corporation*, then the value of any asset so transferred or received *shall be taken at its cost of acquisition* (*at the date when acquired by such previous owner*) with proper allowance for depreciation, impairment, betterment or development, but no addition to the original cost shall be made for any charge or expenditure deducted as expense or otherwise on or after March 1, 1913, in computing the net income of such previous owner for purposes of taxation. (Italics ours.)

The petitioner being entitled to include in invested capital only the sum representing the cost of the lease to Holden, it follows that, he having paid nothing or having relinquished no valuable right therefor, the petitioner may not include the value of the lease or any amount on account thereof in invested capital for the years in question. The Commissioner's action in this respect is, therefore, approved.

The petitioner's second contention is that the lease in question had a value at the time of its acquisition of $70,000 and that, as the term thereof was ten years, it is entitled to deduct annually for exhaustion one-tenth of its value, or $7,000. The Commissioner, on the other hand, denies that the petitioner is entitled to deduct for exhaustion of the lease the amount of $7,000 or any other amount.

We come, therefore, to the question as to the value, if any, of the lease at the time it was acquired by the petitioner in exchange for its

stock. The record contains a variety of opinions respecting the value of the lease at the time it was acquired by Holden and at the time it was acquired by the petitioner.

Two witnesses, each in the real estate business in Akron, and each familiar with rentals in Akron during 1916 and 1917, testified that rentals had increased at least 50 per cent during these two years. It was also shown that the city was booming, due to business conditions, and that prices were rapidly rising.

A disinterested qualified real estate dealer, specializing in property in that vicinity, testified that at the time the lease was acquired by the petitioner, a fair rental for the property or " for the lease as it stands or written " would have been $30,000 a year, or about $10,000 more a year than the rental specified in the lease. Three of the five members of the board of directors who placed a value of $70,000 on the lease, were in the real estate business in Akron. Beginning three months after the acquisition of the lease by petitioner, and throughout 1918, stock of the corporation was sold at par, despite the fact that no dividends had been declared.

After carefully considering all of the evidence presented by the petitioner with respect to the value of the leasehold at the time of its acquisition and giving due consideration to the contention of the Commissioner that the lease was merely given a value in order to absorb the total par value of the stock authorized and that the subsequent sale of stock at par was based on going concern value, we conclude that the lease on January 7, 1918, had an actual cash value of at least $60,000. Accordingly, during the years in question petitioner should be allowed to deduct exhaustion upon the leasehold on the basis of a cost of $60,000 to be prorated over the life of the lease from January 7, 1918.

*Judgment will be entered on 15 days' notice, under Rule 50.*